UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(Western Section)

Civil Action No. 03-30112-MAP

| | |
|---|---|
| RHONDA ST. MARIE,<br>    Plaintiff,<br>v.<br><br>KAWASAKI MOTORS CORP., U.S.A. and<br>    Defendant. | ) <br>) PLAINTIFF'S AMENDED CIVIL<br>) COMPLAINT AND DEMAND FOR<br>) JURY TRIAL<br>)<br>)<br>) |

## PARTIES

1. The Plaintiff, Rhonda St. Marie, is a natural person residing at 23 Connecticut Street, in Holyoke, Massachusetts.

2. The Defendant, Kawasaki Motors Corp., U.S.A., is a duly organized corporation with its corporate offices located in Santa Ana, California 92799. The defendant corporation is in the business of manufacturing and selling motorcycles and all terrain vehicles.

## FACTS RELEVANT TO ALL COUNTS

3. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 2.

4. On or around November 11, 2000, the Plaintiff was riding a 2001 Kawasaki motorcycle manufactured, sold and/or distributed by the Defendants.

5. While riding said motorcycle, the Plaintiff attempted to brake but was unable to.

6. Her inability to brake and slow the motorcycle was due to a defect in the brake system.

7. As a result, the Plaintiff was caused to fall, was seriously and permanently injured, suffered great pain of body and mind, was put to great expense for medical care and attendance, lost time formwork and was otherwise injured.

### COUNT I
### (Rhonda St. Marie v. Kawasaki Motors Corp., U.S.A.)
### (Negligence)

9. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 8.

10. The defendant negligently manufactured, inspected and distributed said motorcycle.

11. As a result of the defendant's negligence, the plaintiff was injured.

WHEREFORE, the plaintiff demands judgment against the defendant for damages, costs, attorney's fees and interest.

### COUNT II
### (Rhonda St. Marie v. Kawasaki Motors Corp., U.S.A.)
### (Breach of Express Warranty)

12. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 11.

13. The defendant expressly warranted that said motorcycle was safe.

14. The plaintiff relied upon the defendant's warranty that said motorcycle was safe.

15. Said motorcycle was not safe.

16. As a result of the defendant's breach of express warranty, the plaintiff was injured.

17. Due notice of said breach of warranty was given to the defendant.

WHEREFORE, the plaintiff demands judgment against the defendant for damages, costs, attorney's fees and interest.

### COUNT III
### (Rhonda St. Marie v. Kawasaki Motors Corp., U.S.A.)
### (Breach of Implied Warranty of Merchantability)

18. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 17.

19. The defendant impliedly warranted that said motorcycle was merchantable.

20. Said motorcycle was not merchantable and thus the defendant breached the warrant of merchantability.

21. As a result of the defendant's breach of warranty, the plaintiff was injured.

22. Due notice of defendant's breach of warranty was given by the plaintiff.

WHEREFORE, the plaintiff demands judgment against the defendant for damages, costs, attorney's fees and interest.

## COUNT IV
### (Rhonda St. Marie v. Kawasaki Motors Corp., U.S.A.)
### (Violation of M.G.L. c.93A)

23. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 22.

24. At all times relevant hereto the defendant was engaged in trade or commerce within the meaning of M.G.L.c.93A.

25. Defendant, its agents, employees and/or servants, knew or should have known that the motorcycle was defective.

26. The acts and/or practices of Defendant as described above constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A §2. Defendant's acts described above were performed willfully and knowingly.

27. As a result of the above described acts or practices, the Plaintiff suffered severe injury to body and mind, incurred substantial medical expenses, and was caused to loose time from work.

28. On March 3, 2004, Plaintiff sent the Defendant, via certified mail, return receipt requested, a written demand for relief pursuant to M.G.L. c.93A §9. A copy of the demand letter is attached hereto as Exhibit A.

29. On April 28, 2004, Defendant sent a written reply to Plaintiff's demand letter. In this letter, Defendant failed and/or refused to make a reasonable offer of settlement to the Plaintiff. A copy of the demand letter is attached hereto as Exhibit B. The refusal was made in bad faith with knowledge or reason to know that the acts and practice of Defendant violated M.G.L. c.93A §2.

WHEREFORE, the Plaintiff requests that the court:

    a. Enter judgment for the Plaintiff against Defendant;

    b. Award damages to Plaintiff in an amount to be determined by the court;

    c. Treble such amount as provided by M.G.L. c.93A §9(3);

    d. Award interest, costs, and attorney's fees to the Plaintiff; and

    e. Award such other relief as this Court deems just and proper.

**The Plaintiff hereby demands a jury trial on all counts so triable.**

## COUNT IV
## (Rhonda St. Marie v. Kawasaki Motors Corp., U.S.A.)
## (Violation of M.G.L. c.93A)

23. The Plaintiff, Rhonda St. Marie, hereby incorporates by reference, realleges and adopts the allegations contained in paragraphs 1 through 22.

24. At all times relevant hereto the defendant was engaged in trade or commerce within the meaning of M.G.L.c.93A.

25. Defendant, its agents, employees and/or servants, knew or should have known that the motorcycle was defective.

26. The acts and/or practices of Defendant as described above constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A §2. Defendant's acts described above were performed willfully and knowingly.

27. As a result of the above described acts or practices, the Plaintiff suffered severe injury to body and mind, incurred substantial medical expenses, and was caused to loose time from work.

28. On March 3, 2004, Plaintiff sent the Defendant, via certified mail, return receipt requested, a written demand for relief pursuant to M.G.L. c.93A §9. A copy of the demand letter is attached hereto as Exhibit B.

29. On April 28, 2004, Defendant sent a written reply to Plaintiff's demand letter. In this letter, Defendant failed and/or refused to make a reasonable offer of settlement to the Plaintiff. A copy of the demand letter is attached hereto as Exhibit C. The refusal was made in bad faith with knowledge or reason to know that the acts and practice of Defendant violated M.G.L. c.93A §2.

WHEREFORE, the Plaintiff requests that the court:

    a. Enter judgment for the Plaintiff against Defendant;

    b. Award damages to Plaintiff in an amount to be determined by the court;

    c. Treble such amount as provided by M.G.L. c.93A §9(3);

    d. Award interest, costs, and attorney's fees to the Plaintiff; and

    e. Award such other relief as this Court deems just and proper.

**The Plaintiff hereby demands a jury trial on all counts so triable.**


Respectfully submitted,
The PLAINTIFF,

By: _____
A.J. O'Donald, III
1859 Northampton Street
Holyoke, MA 01040
(413) 533-7400 - telephone
(413) 533-7577 – facsimile
BBO# 638172

# EXHIBIT B

# O' DONALD LAW OFFICES

1859 NORTHAMPTON STREET
HOLYOKE, MASSACHUSETTS 01040
TELEPHONE 413-533-7400
FASCIMILE 413-533-7577

A.J. O'DONALD, III

ALISON M. BARTLETT-O'DONALD*

*ALSO LICENSED IN CONNECTICUT AND NEW YORK

March 3, 2004

**Via certified mail/return receipt requested 7003 1680 0001 1939 3300**

Attorney Peter M. Durney
Attorney Gregg P. Bailey
Cornell & Gollub
75 Federal Street
Boston, MA 02110

Re:   <u>Rhonda St. Marie v. Kawaski Motors Corporation, U.S.A.</u>
      **United States District Court C.A. No. 03-CV-30112-MAP**

Dear Counsel:

As you know, our office represents Rhonda St. Marie for severe and extensive personal injuries she sustained while riding a 2001 Kawasaki KX85 motorcycle. Please be advised that this is a demand for relief pursuant to **Massachusetts Consumer Protection Act, M.G.L. c.93A §§ 2, 9.**

## DEFECTIVE CONDITION OF MOTORCYCLE

Ms. St. Marie is a twenty-eight (28) year old female who was seriously injured when riding a 2001 KX85 Kawasaki motor vehicle. The vehicle had been purchased on October 14, 2000 and given to my client as a gift. As discovery has established, the brake system failed because the cotter pin installed on this particular motorcycle was manufactured from an incorrect material making it readily subject to breaking. Kawasaki had notice of the defective cotter pins and in fact initiated a recall shortly after my client's accident.

The defective condition of the cotter pin, in effect, causing the brake system to fail, constitutes a breach of an express warranty, breach of the implied warranty of merchantability and negligence. By distributing, selling and/or manufacturing the motorcycle in such a dangerous condition, Kawasaki's conduct amounts to an unfair and deceptive act and/or practice in violation of the Massachusetts Consumer Protection Act, M.G.L. c.93A, ("c.93A"). As you know, a violation of this statute allows for treble damages, attorney's fees and costs. <u>Cassano v. Gogos</u>, 20 Mass.App.Ct. 348, 350-351 (1985). Given the extent of my client's injuries combined with Defendant's

unlawful conduct, it is foreseeable that the court will impose treble damages against Kawasaki.

## MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L. c.93A

The Supreme Judicial Court has articulated that the Defendant's actions described above constitute violations of the Massachusetts Consumer Protection Act. In Maillet v. ATF Davidson, Co., 407 Mass. 185 (1990), the Supreme Judicial Court held that a **breach of warranty and negligence** in the manufacture or sale of a product constitutes a violation of the Massachusetts Consumer Protection Act, M.G.L. c.93A. In addition, the Supreme Judicial Court has ruled that a **breach of the implied warranty of merchantability** constitutes a violation of c.93A. Vassallo v. Baxter Healthcare Corp., 428 Mass. 1 (1998). Furthermore, you should be aware that "[b]reaches of express and implied warranties constitute a virtual per se violation of [G.L. c.93A, §2]." Accord Glyptal Inc. v. Engelhard Corp., 810 F.Supp. 887, 899 (D.Mass. 1992).

In addition, Defendant should recognize that its conduct also violates the Attorney General's Regulations. Under c.93A, §2(c), the Attorney General is authorized to issue rules and regulations defining specific conduct that constitutes an unfair method of competition or unfair or deceptive acts or practice. In Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 775 (1980), the Supreme Judicial Court reminded us that the regulations promulgated by the Attorney General shall have "the force of law." In other words, acts or practices that violate any existing statutes, rules, regulations or law meant for the protection of the public's health, safety or welfare are prohibited under the Attorney General's Regulations. 940 C.M.R. §3.16(3). Defendants conduct causing a breach of an express warranty and implied warranty of merchantability violates the following two regulations established by the Attorney General:

> **940 C.M.R. §3.08(2)** – regarding a breach of warranty:
>
> It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty.
>
> **940 C.M.R. §8.01(27)** – a warranty includes both express and implied warranties:
>
> An express warranty or any statement in the nature of an express warranty or guarantee includes any affirmation of act or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.

Accordingly, Defendant's violations of the Attorney General's Regulations constitute further evidence of unlawful acts and practices as defined under c.93A.

## MEDICAL TREATMENT

After the fall, Rhonda was taken to the Baystate Medical Center Emergency Room complaining of injuries to her right knee. The doctor's physical examination revealed

swelling and tenderness over the medial collateral ligament. Her admitting diagnosis was a severe strain of the right knee with the question of an avulsion fracture. She was given a right knee immobilizer, crutches, anti-inflammatories, analgesics and directed to follow up with the orthopedics department. An x-ray taken at the Emergency Room suggested a small avulsion fracture of the posterior tibia. She was originally placed out of work for two days and instructed to be on light duty for an additional seven days.

Her pain did not subside. Approximately four days later, she presented to the Holyoke Hospital Emergency Room complaining of severe swelling. At the time of her admission to the hospital, she was still on crutches and wearing a knee brace but there was swelling and numbness in the area of her right leg, calf and ankle. She had been taking Percocet and Motrin as ordered by the doctors. A physical examination at the Holyoke Hospital emergency room revealed swelling, tenderness and bruising of the knee. At the hospital, it was decided to perform an ultrasound to rule out any venous thrombosis. Fortunately, the result was negative. At that point, she was instructed to stay out of work for two days and then to only do sitting work for five days.

In the interim, she scheduled an appointment with Dr. Bullock, a local orthopedic surgeon. Dr. Bullock examined Ms. St. Marie on November 14, 2000, just ten days after the motorcycle accident. Dr. Bullock's examination revealed ecchymosis and tenderness and moderate effusion. He ordered an MRI scan and placed her on Darvocet for the pain. On November 27, 2000, she returned to see Dr. Bullock, having had the MRI. The MRI revealed a tear of the anterior cruciate ligament, a loss of extension and pain in the medial and lateral area of the knee. Dr. Bullock recommended a course of physical therapy, provided her a prescription for Naprosyn and scheduled her for a return appointment.

On December 4, 2000, she began physical therapy. Upon examination, the therapist observed mild effusion, weak quadriceps and a lack of full extension of flexion. Over the next two days, Ms. St. Marie experienced an increase in her pain. She reported this to the physical therapist who noted her complaints of increased pain and swelling. At that time, Ms. St. Marie was recommended to see Dr. Charles Brown, an orthopedic surgeon at Brigham Orthopedic Associates in Boston.

Dr. Brown originally examined Ms. St. Marie on December 12, 2000. His physical examination indicated that she lacked full extension and full flexion with moderate effusion. There was significant pain as evidenced in his examination. He reviewed the x-rays and found a non-displaced depression fracture of the medial tibial plateau and a small avulsion fracture posteriorly. He also reviewed the MRI and concurred that it showed a complete tear of the anterior cruciate ligament. Because of the significant loss of motion, Dr. Brown recommended that she undergo pre-operative rehabilitation prior to surgery being performed. The rehabilitation program consisted of home exercise.

On December 26, 2000, Ms. St. Marie attended a follow-up visit with Dr. Brown. At that point, there had been a resolution of the swelling and thus it was Dr. Brown's

recommendation that she undergo patellar tendon reconstruction surgery. In preparation for her surgery, she underwent a Doppler study at the Holyoke Hospital on January 4, 2001.

Subsequently, on January 26th, she underwent surgery at the Brigham Women's Hospital in Boston, Massachusetts. Ms. St. Marie was anesthetized and the operation proceeded. The operative note reflects that a two-inch anterior incision was used to harvest the tendon, then graphed and reconstructed. Subsequent to the surgery, she was admitted to the recovery room. Upon her discharge, she was given instructions for a strenuous rehabilitation program. On January 30, 2001, she saw Dr. Brown in follow-up. At the time of her visit, she had a large hematherosis and significant bleeding into her joint. Her wound was cleaned and her dressing was changed. She was then referred to outpatient physical therapy.

Ms. St. Marie began outpatient physical therapy at the NOVA Care Physical Therapy Department on or about January 30, 2001. The original plan called for treatment two to three times a week for four to six weeks. She underwent therapy as instructed by the doctor and was seen in numerous physical therapy sessions which concluded in late March. On February 28th, the therapist reported continued swelling in her leg which was restricting her improvement and rehabilitation.

On February 5th, Ms. St. Marie saw Dr. Brown in follow-up. Ms. St. Marie being unable to tolerate the medication which was causing nausea and vomiting prompted the visit. Dr. Brown noted that although the wounds were healing, the patella tendon sutures were not ready to come out and would be left in for another week. He found her range of motion to be continuously restricted.

Ms. St. Marie saw Dr. Brown again in follow-up on February 13th, which was approximately two weeks following the ACL surgery. She was at that point on one crutch. She was instructed to accelerate her course of therapy and then to begin stationary bike exercises.

She saw Dr. Brown again in follow-up on April 10, 2001. She reported that she had developed pain while doing her rehabilitation exercises which was causing her to limp and suffer additional swelling. Dr. Brown, as a result, altered her course of physical therapy.

On May 8th, she again saw Dr. Brown in follow-up. She was then three months post reconstruction. Dr. Brown again noticed the weakness in her legs and initiated a controlled strengthening program using a stationary bike. Ms. St. Marie returned to Dr. Brown on June 19th which was five months post surgery. Because of ongoing pain, Dr. Brown prescribed her Vioxx, an anti-inflammatory drug.

In October of 2001, she returned to Dr. Brown complaining of continued patellar pain although it had decreased. His examination revealed patellofemoral crepitation. She was again instructed on internal extension exercises.

She last saw Dr. Brown on December 17, 2001 which was eleven months post surgery. She continued to express pain in the area of the donor site. Dr. Brown observed a decreased sensation in the saphenous nerve. This, according to Dr. Brown, is a common complication of patellar reconstruction. It is Dr. Brown's opinion that the decreased sensation will improve and will reach an end point in approximately two years. He expects that her stability in the strength of her knee will reach an end point in two years. She was again given exercises to follow up with and instructed that she could begin skating and skiing on a very limited basis. She attempted to skate once but the pain was so intense that she chose to discontinue. She has not opted to attempt skiing as of this date and she reports that it is unlikely she will do so in the foreseeable future.

Ms. St. Marie has continuous pain in the area of the injury. Before this accident, Ms. St. Marie enjoyed physical activity. She was an avid skier and skater. She has been significantly limited by these injuries. As a result, she has been unable to continue with activities she once enjoyed.

The surgery Ms. St. Marie underwent has left her with a significant scar on her right knee. The scars, which are raised and reddened, are a matter of concern. Like any other young woman, her physical appearance is important to her and she feels strongly that the scars are deforming.

In addition to the physical injuries as are outlined above, Ms. St. Marie has incurred medical expenses in the amount of $23,655.11. She has also lost a significant amount of time from work due to her injury, the surgery, rehabilitation and trips to Boston.

## SETTLEMENT DEMAND

In this case, liability has become reasonably clear. Notwithstanding, the Defendant has refused to extend a settlement offer. Once again, on behalf of my client, I hereby offer to settle this case for $97,500.00. In the event, Defendant fails to make a reasonable settlement offer within thirty days from receipt of this letter, on behalf of my client, I will amend the civil complaint to add a count for violation of the Massachusetts Consumer Protection Act. As you know, this statute provides for treble damages, attorney's fees and costs.

Thank you for your attention to this matter.

Very truly yours,

A.J. O'Donald, III

cc:    Ms. Rhonda St. Marie

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attn: Drew P. Bailey
Cornell + Golub
75 Federal Street
Boston, MA 02110

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _[signature]_
☒ Agent
☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery
3-?-0?

D. Is delivery address different from item 1? ☐ Yes ☒ No
If YES, enter delivery address below:

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7003 1680 0001 1939 3300

PS Form 3811, August 2001   Domestic Return Receipt   102595-02-M-1540

# EXHIBIT C

DAVID H. SEMPERT
PETER M. DURNEY◊+
DAVID W. McGOUGH**
THOMAS A. PURSLEY◊+
MARIE CHADEAYNE CHAFE⌂
JAMES P. KERR
PATRICIA A. HARTNETT◊
STEPHANIE LYONS SULLIVAN
GREGG P. BAILEY⌂
MARCI J. SHYAVITZ
CHRISTINE A. KNIPPER
TRACY L. KORAL
MELANIE M. RAND
OF COUNSEL
PHILIP J. FOLEY*

# CORNELL & GOLLUB
ATTORNEYS AT LAW
75 FEDERAL STREET
BOSTON, MASSACHUSETTS 02110

TELEPHONE (617) 482-8100
TELECOPIER (617) 482-3917
cgmail@cornellgollub.com

ROBERT W. CORNELL
(1910-1987)
KARL L. GOLLUB
(1934-1985)

RHODE ISLAND OFFICE

148 MAIN STREET
WAKEFIELD, RHODE ISLAND 02879

TELEPHONE (401) 782-2072
TELECOPIER (401) 782-4941

⌂ ALSO ADMITTED IN CONNECTICUT
* ALSO ADMITTED IN MAINE
+ ALSO ADMITTED IN NEW HAMPSHIRE
※ ALSO ADMITTED IN NEW YORK
** ALSO ADMITTED IN PENNSYLVANIA
◊ ALSO ADMITTED IN RHODE ISLAND

April 28, 2004

A.J. O'Donald, III, Esq.
O'Donald Law Offices
1859 Northampton St.
Holyoke, MA  01040

**VIA FACSIMILE & CERTIFIED**
**MAIL – RETURN RECEIPT REQUESTED**

RE:   Rhonda St. Marie v. Kawasaki Motors Corporation, U.S.A.

Dear Mr. O'Donald:

We are in receipt of your letter dated March 3, 2004, which purports to be a demand letter pursuant to Massachusetts General Laws, Chapter 93A for alleged unfair or deceptive acts or business practices on the part of Kawasaki Motors Corp., U.S.A. ("KMC USA") in violation of the Massachusetts Consumer Protection Act. This letter will serve as KMC USA's formal response to that demand.

KMC USA denies that it has engaged in any unfair or deceptive acts or practices that would give rise to a c. 93A claim as your letter alleges. The Supreme Judicial Court in the case of Spring v. Geriatric Authority of Holyoke, 394 Mass. 274 (1985), has stated that the purposes of a c. 93A letter are twofold:

1.   "to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct," and

2.   "to operate as a control on the amount of damages which the complainant can ultimately recover."

Id. at 288. With respect to unsupported demands such as yours, the Court has also stated:

Clearly such an exorbitant demand for relief is hardly likely to promote negotiation and settlement or to operate as a control on damages . . . We therefore hold that the

> plaintiff's demand letter . . . does not satisfy the jurisdictional prerequisite to suit under G.L. c. 93A, § 9.

Id. at 288-89. We respectfully submit that your letter does not satisfy the requirements of c. 93A as the amount of damages sought is not reasonable and is not of the type that would promote negotiation under the facts and circumstances of this case.

As you are aware, KMC USA undertook a significant investigation into the subject accident and remains willing to review any and all new evidence that you present. Despite these efforts, including extensive written discovery and the deposition of plaintiff, there is no evidence that would support the conclusion that a failure of the cotter pin caused plaintiff's accident. The sole basis for any inference of a causal connection is plaintiff's unsupported statement that her brakes failed. That allegation, however, was not made until after plaintiff received notice of the subject recall campaign and well after the subject accident. The more likely cause for the accident, as plaintiff explained to her doctors, is that she simply wiped out.

Even if the condition of the subject recall existed in the subject motorcycle at the time of the accident, which you have not established despite your contentions to the contrary, there is ample reason to believe that it did not contribute to the subject accident. Plaintiff readily admitted at deposition that her front brakes were functional. In addition, the scene of the accident afforded her plenty of time and space to bring the vehicle to a safe stop. Any alleged failure of the brakes as described would not have caused an accident by an experienced rider such as plaintiff, who only moments before was performing advanced maneuvers on an off-road track.

Nevertheless, in an effort to resolve all claims raised by plaintiff, KMC USA is willing to offer $20,000 in full and final settlement of all claims arising from plaintiff's alleged accident. This offer is not an admission of liability, but is meant to promote the negotiation and reasonable settlement of plaintiff's claims in order to avoid future costs of litigation. This offer is made despite the significant flaws in plaintiff's case and her own negligence.

Finally, the prerequisites of 93A are not satisfied by service upon undersigned counsel for the defendant in this action. We have responded on behalf of KMC USA not because your letter was properly served, but because we wish to ensure no further misunderstanding while at the same time waiving none of our client's rights.

If you would like to discuss this offer in more detail, please contact us.

Very truly yours,

Gregg P. Bailey

GPB/bmh